UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

KHANI PHILLIBERT,

Defendant.

---

15 Cr. 647 (PAE)

OPINION &
ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Khani Phillibert ("Phillibert") seeking

his release from Federal Correctional Institution Ray Brook ("FCI Ray Brook") pursuant to

18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk that the COVID-19 pandemic presents for

inmates, and for Phillibert in particular. *See* Dkt. 63 ("Def. Mem."). The Government opposes

this request. *See* Dkts. 59 ("Gov't Mem."), 64 ("Gov't Ltr."). For the following reasons, the

Court grants this application.

Phillibert was arrested on New York State charges in August 2015 after New York Police

Department officers saw a gun fall out of his shorts and onto the street. Gov't Mem. at 1. The

officers searched Phillibert, and discovered 72 bags of crack cocaine, totaling almost four grams;

sums of counterfeit currency; and that the gun had been loaded. *Id.* Phillibert also testified

falsely about the incident before a New York State grand jury. *Id.*

On January 22, 2016, Phillibert pled guilty to one count of possessing crack cocaine with

intent to distribute it, in violation of 21 U.S.C. § 841(b)(1)(C), and one count of possessing a

firearm in connection with and in furtherance of that offense, in violation of 18 U.S.C. § 924(c).

*Id.* at 2; Dkt. 56 ("Sent. Tr.") at 6. The parties stipulated to a Guidelines range of 84 to 90

months' imprisonment. Gov't Mem. at 2; Sent. Tr. at 9. In preparing the pre-sentencing report, the Probation Office found previous offenses that made an advisory Guidelines range far higher than as stipulated in the plea agreement, given the career offender guideline adjustment. Gov't Mem. at 2; Dkt. 53 ("Conf. Tr.") at 2. At sentencing, the Government asked the Court "to give decisive weight to the plea agreement," and noted that "in this particular case, given how high the guidelines are, and given the nature of this offense, the guidelines also do have it wrong." Sent. Tr. at 18–19.

On May 17, 2016, the Court sentenced Phillibert to a total of 90 months' imprisonment and seven years' supervised release. *Id.* at 41–42. The Court disregarded as unreasonably high the guideline range yielded by the career offender guideline, *id.* at 31, and, in assessing the 18 U.S.C. § 3553(a) factors, focused primarily on the seriousness of Phillibert's offense and the consequent need for just punishment. *Id.* at 32 (describing crack distribution as "a very socially destructive offense"); *id.* ("Crack use destroys lives. It destroys families. It destroys communities. As a crack dealer, you were part of that destructive process."). Moreover, the Court noted that because Phillibert had a loaded gun, death, injury, and potentially far more serious charges against Phillibert could have resulted from his conduct. *Id.* at 33. The Court noted the interest in general deterrence, in particular because of the "epidemic problems" of crack dealing and illegal gun possession, *id.* at 34, and in specific deterrence, particularly because Phillibert had been an adult at the time of his conviction and this conviction was his ninth. *Id.* at 34–35. Finally, the Court found that the interest of public protection was significant, because Phillibert's actions "consistently reflected a propensity to deal drugs, primarily crack, among other crimes," and because Phillibert's lie under oath about his conduct indicated little respect for the law. *Id.* at 37. The Court concluded that, in light of these facts, a

sentence of 30 months' imprisonment on Count One, followed by the mandatory consecutive

sentence of 60 months' imprisonment on Count Two, for a total sentence of 90 months, was

appropriate. *Id.* at 41–42. The Court imposed a slightly above-guidelines sentence of seven

years' supervised release on Count One as a deterrent, to run concurrently with five years'

supervised release on Count Two. *Id.* at 42.

As of July 1, 2021, Phillibert had served 87% of his sentence. Def. Mem. at 4. The

Bureau of Prisons ("BOP") calculated his projected release date as May 22, 2022, and the date

on which he is eligible for home detention as November 15, 2021. *Id.*; *id.*, Ex. A. at 2.

On June 14, 2021, the Court requested that Phillibert's trial counsel, Montell Figgins,

submit a memorandum in support of Phillibert's motion for compassionate release, which he had

submitted *pro se*, and it set a briefing schedule. *See* Dkt. 58. On July 13, 2021, the Government

submitted a timely response opposing Phillibert's motion. Dkt. 59. On July 14, 2021, the Court

appointed Valerie A. Gotlib, Esq., to represent Phillibert, after Mr. Figgins declined to submit a

memorandum in support of Phillibert's motion. Dkt. 60. On August 19, 2021, Ms. Gotlib filed

such a memorandum, arguing that release was warranted on account of the pandemic, the fact

that Phillibert has a number of medical conditions with co-morbidities for COVID-19, and his

rehabilitation while incarcerated. Dkt. 63. On August 25, 2021, the Government submitted its

reply. Dkt. 64.

In opposing Phillibert's release, the Government argues that Phillibert has not established

extraordinary and compelling reasons for compassionate release, and that the 18 U.S.C.

3

§ 3553(a) factors counsel against release given the seriousness of Phillibert's offense, his

criminal history, and his poor disciplinary history in prison.[1]

> Under 18 U.S.C. § 3582(c)(1)(A), a court:
>
> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18

U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the

defendant seeks decreased punishment, he or she has the burden of showing that the

circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP),

2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release

proceedings, and instead required the BOP to seek such release on their behalf. *United States v.*

*Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the First Step Act

of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants

independently to seek compassionate release relief from federal courts. *Ebbers*, 432 F. Supp. 3d

at 422–23.

The Second Circuit has recently clarified the regulatory guidance applicable to § 3582(c)

applications made by defendants. Before the First Step Act, Congress had tasked the Sentencing

---

[1] Although the Government initially argued that Phillibert had not exhausted his administrative remedies from BOP, Gov't Mem. at 1, 5, the Government now concedes that Phillibert has done so, Gov't Ltr. *See* Def. Mem. at 2 (noting that more than 30 days have lapsed following Phillibert's administrative request for a reduced sentence).

Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out various circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons," *id.* § 1B1.13; the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own. Accordingly, although courts, including this one, had heretofore widely treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g., United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has now clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to

5

the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

In this case, consideration of the 18 U.S.C. § 3553(a) factors favors the expedition of Phillibert's release date from prison, in favor of his serving a term of home confinement as a condition of supervised release.

First, and significant here, Phillibert does not have a history of violence. As a result, the § 3553(a) factor requiring that the sentence imposed "protect the public from further crimes of the defendant" centers on assuring that Phillibert not resume drug dealing or gun possession. The Court's judgment is that the interest in the protection of the public can be achieved by requiring, at the outset of Phillibert's supervised release, a condition of home confinement, with very strict limitations on Phillibert's ability to leave the home, and reporting requirements. The Court will require an 8-month period of home confinement (which would extend beyond the remaining anticipated term of Phillibert's carceral sentence). Critically, this Court would be responsible for sentencing Phillibert in the event that he were to violate any condition of supervised release. Accordingly, per this decision, Phillibert will be on notice upon his release that any violation of supervised release, and particularly a violation indicative of narcotics use or distribution, or other criminal conduct such as conduct involving firearms, will be regarded as a grave breach of the trust the Court is today putting in him, which would almost certainly guarantee his immediate remand and imposition of a meaningful new prison term as punishment for that breach. Having served more than 70 months in prison, including the past 17 during the severe conditions occasioned by the current COVID-19 pandemic, Phillibert assuredly has no rational interest in returning to that environment. He has every

incentive to strictly obey the law so as to avoid remand and a new prison term.

The Court accordingly finds that Phillibert's expedited release, on such conditions, would not put the public at undue risk. For much the same reasons, Phillibert's early release is consistent with the important interest in specifically deterring him from committing future crimes. Phillibert's impressive strides while incarcerated, including his successful completion of a GED and more than 20 courses offered by the BOP, reinforce that he has the capacity for self-control when properly incentivized.[2]

Second, the principal § 3553(a) factors that undergirded the sentence the Court imposed were to ensure that Phillibert's sentence reflected the seriousness of his offense, promoted respect for the law, and represented just punishment. Those factors remain as weighty today as at the time of sentencing. However, Phillibert's term in custody has proven more arduous than the Court intended—or anyone could have anticipated. That is because, for the past 17 months, Phillibert has been incarcerated during the unprecedented worldwide pandemic.

Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts in measuring a just sentence. *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196–97 (2d Cir. 2001) (holding that that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for

---

[2] The Government cites three disciplinary incidents between April and May 2021, along with earlier incidents. Gov't Mem. at 3. The Government argues that there is therefore an "ongoing need to keep Phillibert in prison in order to protect the public and promote specific deterrence." *Id.* at 5. The defense counters by noting that "two of those violations were for a relatively minor offense," and that Phillibert is appealing the third, for being under the influence of drugs, and for which he is still in the Special Housing Unit ("SHU") at FCI Ray Brook. Def. Mem. at 5. Although these episodes are concerning, the Court does not find that they rise to the level of mandating continued incarceration. A lengthy term of home confinement as a condition of supervised release, with which self-interest should lead Phillibert to comply, should adequately protect the public.

downward departures," and vacating and remanding the defendant's sentence "so that the district court [could] reconsider the defendant's request for a downward departure, and do so in the light of this holding"); *United States v. Sanpedro*, 352 F. App'x 482, 486 (2d Cir. 2009) (summary order) (noting that "[i]n imposing the sentence it did, the district court considered . . . [among other factors,] the harsh conditions of [the defendant's] confinement at Combita," in Colombia where he was detained before being extradited to the United States); *United States v. Salvador*, No. 98 Cr. 484 (LMM), 2006 WL 2034637, at *4 (S.D.N.Y. July 19, 2006) (holding that defendant's pre-sentence conditions while "incarcerated in the Dominican Republic, awaiting extradition to the United States . . . warrant a downward departure"); *United States v. Torres*, No. 01 Cr. 1078 (LMM), 2005 WL 2087818, at *2 (S.D.N.Y. Aug. 30, 2005) ("depart[ing] downward, by 1 level, because of the harsh conditions of defendant's pretrial detention").

The same logic applies here. As has been widely chronicled, the pandemic, for good and sound public health reasons relating to arresting the spread of the virus within the crowded confines of federal prisons and jails, has required extreme restrictions on prisoners' movements and visits. It has also exposed prisoners to heightened fears of contagion and its consequences.[3] That risk is heightened for prisoners, such as Phillibert, whose medical conditions make them especially vulnerable to the most serious effects of COVID-19.

In the Court's judgment, a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond

---

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html) (highlighting danger faced by those in jails and prisons).

that imposed by an ordinary day in prison. Although such conditions are not intended as

punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing.

*See* Def. Mem. at 1, 6; *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)

("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's]

incarceration harsher and more punitive than would otherwise have been the case. This is

because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose

onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than

normal." (citation omitted)); *United States v. Salemo*, No. 11 Cr. 65-01 (JSR), 2020 WL

2521555, at *3 (S.D.N.Y. May 17, 2020), *reconsideration denied*, No. 11 Cr. 0065-01 (JSR),

2020 WL 3034807 (S.D.N.Y. June 5, 2020), and *vacated and remanded*, No. 20-1936, 2021 WL

2587573 (2d Cir. Mar. 18, 2021) ("noting that the BOP has taken a number of steps to mitigate

the spread of the virus in federal prisons . . . [including] restrictions on visitors, restrictions on

gatherings . . . [and] lockdowns lasting at least 14 days"); *United States v. Smalls*, No. 20 Cr. 126

(LTS), 2020 WL 1866034, at *2 (S.D.N.Y. Apr. 14, 2020) (noting that the "BOP has instituted a

mandatory 14-day quarantine lockdown of all inmates across the BOP system").

Phillibert will become eligible for home confinement on November 15, 2021. He has

thus served approximately 70 months of his total expected approximately 77 months of

incarceration, assuming full good time credit. *See* Def. Mem. at 4; *id.*, Ex. A. That amounts to

approximately 90% of his expected carceral sentence; and, even assuming less than full good

time credit, the vast majority of his expected sentence. The Court's judgment is that the

remaining three months that Phillibert is scheduled to serve in prison are significantly offset by

the unexpected rigors that Phillibert has experienced during the more than 17 months he has

spent in prison during COVID-19. An additional offset is supplied by the lengthy term of home

confinement that the Court will put in place as a condition of his supervised release. In light of these factors, the Court finds Phillibert's early release from prison consistent with the interest of just punishment. For much the same reasons, the Court views Phillibert's overall punishment—considering its length and unexpected rigor—to constitute a sufficiently muscular general deterrent to others who might consider emulating his journey.

Centrally important, too, the Court under § 3553(a) is to consider the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a)(1), (2)(D). These factors take on additional weight in light of Phillibert's heightened vulnerability to COVID-19.[4] Phillibert, through counsel, credibly represents that he has three medical conditions which make him especially vulnerable to the most serious effects of COVID-19—he is a former heavy smoker; he suffers from Chronic Obstructive Pulmonary Disease ("COPD"); and he is obese. *See* Def. Mem. at 2–3. Phillibert has already contracted COVID-19 once while incarcerated. *Id.* at 3. And he has not been provided with the use of his inhaler, with which he treats his COPD, for at least three months. *Id.* at 2.

The Government counters with two arguments.

---

[4] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 5–8 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 153–58 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, 469 F. Supp. 3d 175, 178–80 (S.D.N.Y. 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, 467 F. Supp. 3d 209, 212-13 (S.D.N.Y. 2020) (same); *United States v. Jasper*, No. 18 Cr. 390-18 (PAE), 2020 WL 1673140, at *1–2 (S.D.N.Y. Apr. 4, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 36 days of a four-month sentence).

First, the Government argues that Phillibert has "largely recovered from COVID-19," which he contracted in February 2021, and so does not have an extraordinary or compelling case for sentence reduction. Gov't Mem. at 3, 5. The Government does not elaborate on why this is so. Regardless, Phillibert is clearly at heightened risk given his serious medical conditions and the potential for long-term consequences following a COVID-19 infection. *See, e.g., United States v. Cameron*, No. 16 Cr. 0212 (LAK), 2021 WL 1165133, at *1 (S.D.N.Y. Mar. 25, 2021) ("Cameron already has contracted, and fortunately recovered from COVID-19. Nevertheless, he has a serious co-morbidity and, while cases of reinfection with COVID[-19] have been rare, the increasing prevalence of highly infectious variants has created concern as to whether the prior rarity of reinfection will continue.").

Second, the Government argues that because Phillibert refused BOP's offer to administer the Moderna-manufactured COVID-19 vaccine, "Phillibert cannot meet his burden of showing that the danger COVID-19 poses to him constitutes an extraordinary and compelling reason to release him from prison early." Gov't Mem. at 5. The Court's view, in strong terms, is that an inmate who knowingly rebuffs vaccination, absent compelling circumstances, is ill-positioned thereafter to claim heightened concerns about the virus. However, according to the defense, Phillibert may not have known what was being offered to him; he did not sign the form documenting his alleged refusal of the vaccine; and he has stated that he would like to be vaccinated, and has so informed FCI Ray Brook's medical staff. Def. Mem. at 4. The Court therefore understands Phillibert to state a firm intention to become vaccinated as soon as possible. The Court assumes Phillibert will be vaccinated before his release; if he encounters any impediment to being vaccinated, he is, through counsel, to ask the Government promptly to intercede to assure that the BOP makes vaccination available. For avoidance of doubt, should

11

Phillibert rebuff the vaccine and thereby expose his stated commitment to prompt vaccination as

contrived, he cannot thereafter expect, in the event of a violation of supervised release, any

mercy on account of the risk of contracting COVID-19.

Accordingly, the Court finds that the § 3553(a) factors, viewed in combination from the

vantage point of today, are consistent with Phillibert's prompt release from FCI Raybrook,

provided that his ensuing term of supervised release is subject to a condition of eight months'

home confinement.  The Court also finds that the assembled considerations provide

"extraordinary and compelling reasons," *Brooker*, 976 F.3d at 238, justifying Phillibert's early

release.  The Court primarily bases these findings on the heightened vulnerability to COVID-19

that Phillibert faces due to his medical conditions; the unexpectedly punishing quality of the 17

months that Phillibert has spent in custody during the unprecedented pandemic; the fact that

Phillibert by now has served approximately 90% of his expected carceral sentence; and the sound

reasons to believe that Phillibert, if on supervised release subject to a strict condition of home

confinement, will abide by the law.  His case thus accords with others during this extraordinary

time in which the Court has recently granted compassionate release to prisoners with

demonstrated heightened vulnerability to COVID-19 and who had served the majority of their

carceral sentences.[5]  The Court accordingly grants Phillibert's motion for compassionate release

from prison pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

---

[5] *See United States v. Knox*, No. 15 Cr. 445 (PAE), Dkts. 1084, 1088 (S.D.N.Y. Apr. 10, 2020) (granting compassionate release of defendant who had served all but seven months of an 88-month sentence); *United States v. Hernandez*, 451 F. Supp. 3d 301 at 305 (same for defendant who had asthma and had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. Benjamin*, No. 15 Cr. 445-15 (PAE), 2020 WL 10356810, at *3–4 (S.D.N.Y. Sept. 15, 2020) (same for defendant who had asthma and had served nine years of his 10-year sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2523 (S.D.N.Y. Oct. 9, 2020) (same for defendant who had served 93 months of a 121-month sentence and was

12

As noted, the Court will direct that, as a condition of the term of supervised release that will commence upon his release from prison, Phillibert spend the first eight months following release under strict conditions of home confinement. These conditions will permit Phillibert to leave his home only for medical and employment reasons or with the advance permission of the Probation Department. The Court also expects Phillibert to be subject to close monitoring by the Probation Department, consistent with the protocols for such monitoring in place during the pandemic. These various restrictions are intended to advance various interests recognized by § 3553(a), including to assure just punishment, enhance specific deterrence, and protect the public, and to assist in Phillibert's reintegration into society. To assure time to implement this order, the Court orders that Phillibert be released on September 3, 2021. The Court directs that the Government and the defense, in consultation with the Probation Department, submit to the Court, by September 1, 2021, an agreed-upon order setting out the conditions of home confinement.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: August 27, 2021
New York, New York

---

scheduled to be released in 11 months and to a halfway house in 5); *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5–6 (S.D.N.Y. Jan. 15, 2021) (same for defendant who had served 30 months of an expected 41-month sentence and was scheduled to be released in 11 months and who had several medical conditions).